```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/25/16
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
MICHELLE D'AMICO,                                           :
                                                            :
                          Plaintiff,                        :
                                                            :        13 Civ. 7211 (LGS)
              -against-                                     :
                                                            :        **OPINION AND ORDER**
RONDO INC., et al.,                                         :
                                                            :
                          Defendants.                       :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Michelle D'Amico bring this products liability action against Defendants Rondo Burgdorf, AG and Rondo, Inc. for injuries allegedly sustained from a dough preparation sheeting machine. Defendants move for summary judgment. For the reasons below, the motion is denied.

I.  **BACKGROUND**

The following facts are taken from the materials submitted in connection with this motion and, as required on this motion, viewed in the light most favorable to Plaintiff as the non-moving party.

Plaintiff Michelle D'Amico worked at TKNYC Bouchon Bakery ("Bouchon Bakery") in Manhattan from 2010 until late 2011. Plaintiff asserts that, on or about April 5, 2011, she was injured while working at the bakery and using an STM-615 dough sheeter (the "STM-615"). Defendant Rondo Burgdorf, AG ("RBAG"), a Swiss entity, designed and manufactured the STM-615, and Defendant Rondo, Inc., a corporation based in New Jersey, distributed the STM-615.

A.     The STM-615

Dough sheeters are used to compress chunks of dough into sheets of uniform thickness. The STM-615 is a table-top model that has a center unit and two conveyor tables -- one on each side of the center unit.  The center unit has rollers that compress dough, and the conveyor tables move dough into and out of the center unit.  In order to prevent users from placing their hands near the rollers while the STM-615 is being used, metal safety guards cover the conveyor tables when they are in the down position.

To store the device, the conveyor tables on the STM-615 may be pushed upward to form a "V" shape and latched so that the STM-615 uses less space.  The latching mechanism has two principal components:  (1) the cutouts in the metal safety guards; and (2) the white plastic pieces attached to the sides of the conveyor tables.  To latch a conveyor table in its upright position, the user leaves the safety guard down on the conveyor table and then pushes the conveyor table upwards towards the center unit.  When the conveyor table reaches its upright position, the white plastic piece is supposed to engage with the cutout in the metal safety guard so that the two parts latch together.  The intended use of the conveyor table and latching mechanism is for a user to leave the metal safety guard down so that it covers the conveyor table and then to push the conveyor table to its upright position with the metal safety guard "riding" on top of the conveyor table.

RBAG has used this same latching mechanism on the STM-615 and other equipment for more than 20 years.  Between 20,000 and 30,000 pieces of RBAG equipment with this latching mechanism that have been sold since the mechanism was introduced.

The STM-615 has a warning label affixed to the flat side of a metal guard that includes a symbol that depicts a hand enmeshed in gears and states "danger" and "keep clear of moving parts."

### B. Plaintiff's Alleged Accident

In 2004, Bouchon Bakery bought and began using the STM-615. Plaintiff was a *chef de partie* at the bakery, and one of her responsibilities was using the STM-615 to sheet dough for making cookies. Prior to her injury, Plaintiff had been taught how to use the STM-615 by other workers at Bouchon Bakery, including how to latch it up when she folded it up for storage. She had also used the STM-615 at least a dozen times, including pushing the conveyor tables up and latching them.

On April 5, 2011, Plaintiff worked at the bakery from 2:00 p.m. to approximately midnight. After completing her work with the STM-615, Plaintiff placed the conveyor tables in their upright position and thought had she latched them in place. Plaintiff proceeded to clean the work bench on which the STM-615 had been sitting. Plaintiff had cleaned the workbench for a few minutes when the right conveyor table on the STM-615 fell from its upright position and struck her on the head. No one touched the STM-615 in the few minutes before the conveyor table fell. To the best of Plaintiff's knowledge, no one else saw the alleged accident occur although others were working in the same room.

On the morning of April 6, 2011, Nicholas Bonamico, Plaintiff's former supervisor at Bouchon Bakery, inspected the latching mechanism on the STM-615 and found that it was working properly. Bonamico had used the STM-615 on hundreds of occasions and, until Plaintiff's alleged accident on April 5, he had never heard of an instance when one of the conveyor tables on the STM-615 at Bouchon Bakery came unlatched and fell without anyone touching the sheeter. On each occasion that Bonamico used the STM-615 and pushed the conveyor tables into their upright and latched position, he was comfortable that the tables were securely latched.

## II. STANDARD

Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c)(1); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). Courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *See Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1347 (2015); *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. DISCUSSION

"A manufacturer who places into the stream of commerce a defective product which causes injury may be held strictly liable." *McCarthy v. Olin Corp.*, 119 F.3d 148, 154 (2d Cir. 1997) "In New York, there are three distinct claims for strict products liability: (1) a manufacturing defect, which results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm; (2) a warning defect, which occurs when the inadequacy or failure to warn of a reasonably foreseeable risk accompanying a product causes harm; and (3) a design defect, which results when the product as designed is unreasonably

4

dangerous for its intended use." *Id.* at 154-155 (internal citations omitted).  The parties do not dispute that Plaintiff has asserted claims for defective design and failure to warn, but not defective manufacture.  Defendants seek summary judgment on both claims.

### A. Design Defect Claim

Defendants are not entitled to summary judgment on Plaintiff's design defect claim because material facts are in genuine dispute.  Under New York law, "a defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use, and whose utility does not outweigh the danger inherent in its introduction into the stream of commerce."  *Hoover v. New Holland N. Am., Inc.*, 23 N.Y.3d 41, 53-54 (2014) (quoting *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107 (1983)) (alteration and internal quotation marks omitted).

"To establish a prima facie case for design defect, the plaintiff must show that the defendant 'breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury.'"  *Id.* at 54. (quoting *Voss*, 59 N.Y.2d at 107).  The plaintiff also "bears the burden of presenting evidence that the product . . . feasibly could have been designed more safely."  *Fane v. Zimmer, Inc.*, 927 F.2d 124, 128 (2d Cir. 1991) (citing *Voss*, 59 N.Y.2d at 108).  "The issue of whether a product is defectively designed such that its utility does not outweigh its inherent danger is generally one 'for the jury to decide . . . in light of all the evidence presented by both the plaintiff and defendant.'"  *Yun Tung Chow v. Reckitt & Colman, Inc.*, 17 N.Y.3d 29, 33 (2011) (quoting *Voss*, 59 N.Y.2d at 108).

Plaintiff has adduced evidence that creates triable issues of fact about whether the STM-615 as designed posed a substantial likelihood of harm and was a substantial factor in causing

Plaintiff's injury. Plaintiff's expert, Eric Heiberg, opined that both the "V" shape and the type of latch used are defects. According to Heiberg, the latch could be "precariously perched," meaning that the white plastic piece can slip past the cutout in the metal safety guard such that the table will fall. Heiberg opined that Plaintiff's description of the incident was "consistent" with the latch becoming "precariously perched." Plaintiff testified that she raised the conveyor in the usual manner, the conveyor fell several minutes later and the table was not subject to any unusual force.

Defendants object to Heiberg's methodology, asserting that testing for "precarious perching" by manipulating the components of the latching mechanism to see if they could partially engage is an unforeseeable misuse. On a motion for summary judgment, however, courts are "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). A reasonable jury could infer from Heiberg's opinion and other evidence in the record that the latching mechanism is susceptible to failure if the conveyor was lifted to its upright position -- as Plaintiff did -- or misused in a reasonably foreseeable manner. Accordingly, this argument fails.

Defendants also argue that Heiberg's opinion on "precarious perching" should be disregarded because he testified at his deposition that the latch will not release unless the user moves the safety guard. Plaintiff, however, argues that Defendants misconstrue Heiberg's deposition testimony because Heiberg also testified that a different model was used during the deposition with a different latch support and different guard. Since there are material questions of fact about what Heiberg meant in his deposition, this argument fails.

Defendants further assert that Plaintiff's evidence that the STM-615 was "precariously perched" at the time of her accident is entirely speculative. As support, Defendants argue that,

among other things, only Heiberg has seen the latching mechanism on the STM-615 become precariously perched and that Defendants' expert testified that the only way for the latching mechanism to become "precariously perched" is if someone balanced the components as Heiberg did. These arguments fail on this motion because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Anderson*, 477 U.S. at 255). Defendants' motion for summary judgment on this claim is therefore denied.

### B. Failure to Warn Claim

Defendants are not entitled to summary judgment on Plaintiff's failure to warn claim. To prevail on a failure to warn claim, a plaintiff must prove that "(1) a manufacturer has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known, and (3) that failure to do so was the proximate cause of the harm." *State Farm Fire & Cas. Co. v. Nutone, Inc.*, 426 F. App'x 8, 10 (2d Cir. 2011) (summary order) (citing *Liriano v. Hobart Corp.*, 92 N .Y.2d 232, 237 (1998)).

"The adequacy of the instruction or warning is generally a question of fact to be determined at trial and is not ordinarily susceptible to the drastic remedy of summary judgment." *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 366 (2d Cir. 1997) (quoting *Beyrle v. Finneron*, 606 N.Y.S.2d 465, 466 (4th Dep't 1993)); *see also Johnson v. Delta Int'l Mach. Corp.*, 60 A.D.3d 1307, 1309 (4th Dep't 2009) ("Generally, the adequacy of the warning in a products liability case based on failure to warn is, in all but the most unusual circumstances, a question of fact to be determined at trial." (citation and internal quotations omitted)).

Plaintiff asserts that Defendants failed to warn users that: (1) the conveyor may fall and cause serious injury; (2) the user should ensure that the latch parts mate closely when the

conveyor is in the upright position; and (3) the user should contact service if the parts do not mate closely.  Defendants assert they are entitled to summary judgment on this claim because the only danger that Plaintiff has identified relates to Heiberg's purportedly unforeseeable misuse of the latching mechanism and because there is no evidence that the latching components were "precariously perched" preceding Plaintiff's alleged accident.  For the reasons discussed above, these are questions of fact that make summary judgment inappropriate.  It is for the jury to decide, taking into account all the factors listed above, whether the warnings were adequate given the circumstances of this case.  Accordingly, summary judgment is denied on this claim.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED.  The Clerk of Court is directed to close Dkt. No. 69.

SO ORDERED.

Dated:  January 25, 2016
          New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**